# UNITED STATES DISTRICT COURT

for the

Southern District of illinois

DAMIEN WARD

Plaintiff/Petitioner(s)

v.

GOVERNOR PATRICK QUINN, WARDEN OF MENARD C.C., ASSISTANT WARDEN #1, ASSISTANT WARDEN #1, SALVADOR GODINEZ, C/o MARVIN BARTENS, C/o CHARLES COMPTON, C/o DUSTIN HARMON, Defendant-Respondent(s) Three UNKNOWN CORRECTIONAL GUARDS, SERGE ANT EUADEE UNKN, NURSE OR MED TECH #1, WEXF-ORD HEALTH SOURCES, Inc., C/o COLLINS, NURSE #2, NURSE OR MED. TECH #3, UNKNOWN MEDICAL EMPLOYEES #1 2 & 3, I. JURISDICTION et al, Defendants

Case Number: 14-808-NJR

(Clerk's Office will provide)

☒ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)

☐ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)

☐ CIVIL COMPLAINT
pursuant to the Federal Tort Claims Act,
28 U.S.C. §§1346, 2671-2680, or other law

JURY TRIAL DEMANDED

## I. JURISDICTION

Plaintiff: Damien Ward

A.   Plaintiff's mailing address, register number, and present place of confinement. P.O. Box 899 99, # R59244, Pontiac C.C., Pontiac, Illinois, 61764

Defendant #1:

B.   Defendant ___Patrick Quinn___ is employed as
         (a)   (Name of First Defendant)
     ___Governor of State of Illinois___
         (b)   (Position/Title)
     with ___his principal place of employment being State house in Springfield,___
         (c)   (Employer's Name and Address)
     ___Illinois, 62704___.

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, ~~local, or federal government?~~ ☒ Yes   ☐ No

If your answer is YES, briefly explain: He acted under color of state law at all times relevant to this complaint. His job position makes him the highest ranking supervisor of the Illinois Department of Corrections including Menard C.C.. He is ultimately responsible for all policys, practices, procedures, customs and usages of the I.D.O.C. including Menard C.C.. He has a duty to take the reasonable steps to protect the prisons inmates particularly when he knows that his subordin-

ates are failing to protect inmates from certain risks and dangers to their persons.

Defendant #2:

C.    Defendant __Salvador Godinez_____ is employed as
                        (Name of Second Defendant)

__Director of the Illinois Department of Corrections___
                        (Position/Title)

with __his principal place of doing business located at____
                        (Employer's Name and Address)

__1301 Concordia Court, Springfield, Illinois, 62794.____

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, ~~local, or federal~~ government?  ☒ Yes    ☐ No

If your answer is YES, briefly explain: He acted under color of state law at all times relevant to this complaint. He is also ultimately responsible for all policys, practices, procedures, customs and usages of the I.D.O.C. and Menard C.C.. He has a duty to take the reasonable steps to protect the prisons inmates particularly where he knows or should know that his subordinates are failing to protect inmates from risks and dangers to their persons.

Additional Defendant(s) (if any):

Defendant #3
D.    Using the outline set forth above, identify any additional Defendant(s).

         Defendant Warden of Menard C.C. Michael P. Atchison is employed as Warden of Menard Correctional Center with Menard Correctional Center located at 711 Kaskaskia Street, Menard, Illinois, 62259. And thus he was employed by state government and he acted under color of State Law at all times relevant to this complaint. He is also ultimately responsible for all policies, practices, procedures, customs and usages of the I.D.O.C. and Menard C.C. that effects its inmates.

Defendant # 4

    E.

    Defendant Assistant Warden #1 is employed as an Assistant Warden of Menard Correctional Center which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendant was employed by state Government and acted under color of state law at all times relevant. Said defendant is also ultimately responsible for all policies, practices, procedures, customs and usages of the I.D.O.C. and Menard C.C. that effects its inmates.

Defendant # 5

    F.

    Defendant Assistant Warden #2 is employed as an Assistant Warden of Menard Correctional Center which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendant was employed by state Government and acted under color of state law at all times relevant. Said defendant is also ultimately responsible for all policies, practices, procedures, customs and usages of the I.D.O.C. and Menard C.C. that effects its inmates.

Defendant #6

    G. Defendant C/o Marvin Bartens is employed as an Correctional Officer of Menard Correctional Center which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendant was employed by state government and acted under color of state law at all times relevant.

Defendant # 7

    H. Defendant C/o Charles Compton is employed as an Correctional Officer of Menard Correctional Center which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendant was employed by state government and acted under color of state law at all times relevant.

Defendant # 8

    I. Defendant C/o Dustin Harmon is employed as an Correctional Officer of Menard Correctional Center which is located at 711 Kaskaskia Street, Menard,

Illinois, 62259. Thus said defendant was employed by state government and acted under color of state law at all times relevant.

Defendants #s 9, 10, 11

J. Defendants #s 9, 10, 11 are unknown defendants whom will be identified to the court at a later date are employed as correctional guards of Menard C.C. which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendants were employed by state government and acted under color of state law at all times relevant.

Defendant # 12

K. Defendant Sergeant Euadee (phonetic) is employed as a correctional Sergeant of Menard Correctional Center which is located at 711 Kaskaskia Street, Menard, Illinois, 62254. Thus said defendant was employed by state government and acted under color of state law at all times relevant.

Defendant # 13

L. Defendant unknown nurse or med teck #1 is employed as a Nurse or Med Technician at Menard Correctional Center which is located at 711 Kaskaskia Street, Menard, Illinois, 62254. Thus said defendant was employed by State government and Wexford Health Sources Inc. on info and belief and acted under color of state law at all times relevant.

Defendant # 14

M. Defendant Wexford Health Sources Inc. is a corporation headquartered in Pittsburg, Pennsylvania at: 425 Holiday Drive, Foster Plaza #2, Pittsburg, Pennsylvania, 15220 which provides health services, both physical and mental health services, throughout the I.D.O.C., including Menard Correctional Center, by contract with the State of Illinois for hundreds of millions of dollars. Defendant Wexford Health Sources Inc.

4

, and its employees are responsible for all of its policies, practices, procedures, customs and usages that apply to or otherwise affect the inmates of the Menard Correctional Center at all relevant times.

Defendant # 15

N. Defendant C/o Collins is employed as an correctional officer of Menard C.C. which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendant was employed by State Government and acted under color of state law at all times relevant.

Defendant # 16

O. Defendant Nurse # 2 whom will be identified at a later date is employed as an ~~correctional~~ Nurse at Menard C.C. which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendant was employed by State Government and Wexford Health Sources Inc. on info and belief and acted under color of state law at all relevant times.

Defendant # 17

P. Defendant Nurse or Med Tech # 3 whom will be identified at a later date is employed as a Nurse or Med Technician at Menard C.C. which is located at 711 Kaskaskia Street, Menard, Illinois, 62259. Thus said defendant was employed by State Government and Wexford Health Sources Inc. on info and belief and acted under color of state law at all relevant times.

Defendants # 18, 19, 20

Q. Defendants unknown medical employees 1,2,3 whom will be identified at a later date is employed as medical employees of unknown designation at Menard C.C. which is located at 711 Kaskaskia St., Menard, Illinois, 62259. Thus said defendants are employed by State Government and Wexford Health Sources Inc. on info and belief and acted under color of state law at all relevant times.

II.   **PREVIOUS LAWSUITS**

    A.   Have you begun any other lawsuits in state or federal court relating to your imprisonment?                    ❑ Yes    ☒ No

    B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  <u>Failure to comply with this provision may result in summary denial of your complaint</u>.

        1.   Parties to previous lawsuits:
           Plaintiff(s):     N/A

           Defendant(s):     N/A

        2.   Court (if federal court, name of the district; if state court, name of the county):     N/A

        3.   Docket number:     N/A

        4.   Name of Judge to whom case was assigned:     N/A

        5.   Type of case (for example: Was it a habeas corpus or civil rights action?):     N/A

        6.   Disposition of case (for example: Was the case dismissed?  Was it appealed?  Is it still pending?):     N/A

        7.   Approximate date of filing lawsuit:     N/A

        8.   Approximate date of disposition:     N/A

III.   GRIEVANCE PROCEDURE

A.   Is there a prisoner grievance procedure in the institution? ☒Yes   ☐ No

But exhaustion is an affirmative defense and plaintiff does not have to plead it. Jones v. Bock .549 U.S. 199.

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure? No comment. Jones v. Block id supra.☐ Yes   ☐ No

Exhaustion is affirmative defense. Plaintiff does not have to plead it. Jones v. Bock .549 U.S. 199. 212-17 (2007.)

C.   If your answer is YES,

1.   What steps did you take?

No comment as is plaintiffs right. It's defendants responsibility if they want to raise exhaustion as an affirmative defense. If they fail to raise it they waive it. If plaintiff pleaded exhaustion it may hurt defendants ability to waive their defense.

2.   What was the result?

Exhaustion is an affirmative defense and plaintiff does not have to plead it, the defendants must raise it or waive it.

D.   If your answer is NO, explain why not.

No answer is given to this question.

E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?   ☐ Yes   ☐ No

Exhaustion is an affirmative defense and plaintiff does not have to plead it.

F.   If your answer is YES,

1.   What steps did you take?

Exhaustion is an affirmative defense and plaintiff does not have to plead it.

2.   What was the result?

Exhaustion is an affirmative defense and plaintiff does not have to plead it.

G.   If your answer is NO, explain why not.

No answer is given to this question.

H.   Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not.

Exhaustion is an affirmative defense and plaintiff does not have to plead it the defendants must raise it. Jones v. Bock .549 U.S. 199. 212-17. 127 S. Ct. 910 (2007)

I.   If the Court ends up ordering plaintiff to file a pleading answering the above questions he respectfully will do so of course.

## STATEMENT OF CLAIM

Place of the occurrence _Menard C. C._

Date of the occurrence _On or about 10/19/2012_

Witnesses to the occurrence _Countless see infra_

State here briefly the FACTS that support your case. Describe how EACH defendant is involved.
Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph.
Unrelated claims should be raised in a separate civil action.

THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.

### " CASE NATURE "

1.) The claims in this action arise out of the same transaction, occurence, or series of transactions or occurences, pertain to defendants in common and questions of law or fact common to all defendants will arise in this action.

2) This case is about:

a) a longstanding, deeply embedded, persistant and widespread policy, practice, procedure, custom and usage of the unnecessary use of excessive force by the Menard C.C. officers, supervisors, officials and medical employees on its inmates that placed plaintiff in the imminent and pervasive risk of harm;

b) individual claims of excessive force to plaintiff against correctional officers, supervisors, officials and medical employees;

c) that were done pursuant to said excessive force policy, practice, procedure, custom and usage;

d) and due to the deliberate indifference of various prison officials and invested other official Governor Quinn;

e) and that the excessive force was meted out against plaintiff in violation of his rights Under the Americans With Disabilities Act and Rehabilitation Act;

f) a longstanding, deeply embedded, persistant and widespread policy, practice, procedure, custom and usage of the unnecessary deliberate indifference by the Menard C.C. offi-

8

cers, supervisors, officials and medical employees to its inmates serious medical needs that placed plaintiff in the imminent and pervasive risk of harm ;

g) individual claims of deliberate indifference to plaintiffs serious medical needs against correctional officers, supervisors, officials and medical employees ;

h) that were done pursuant to said deliberate indifference to inmates serious medical needs policy, practice, procedure, custom and usage ;

i) and due to the deliberate indifference of various prison officials and invested other official Governor Quinn.

"JURISDICTION"

3) The Court has jurisdiction over plaintiffs claims of violations of his U.S. Constitutional rights under 28 U.S.C. §§ 1331(a) and 1343.

4) The Court has jurisdiction over plaintiffs claims of violations of his federal statutory rights under 28 U.S.C. §§ 1331 and 1343.

5) The Court has jurisdiction over plaintiffs claims of violations of International Law Rights under U.S. Constitution Art. 1 § 8, cl 10 ; U.S. Constitutional Article 2 § 2, the Supremacy Clause of the U.S. Constitution and jurisdiction is also claimed under the general federal question provision U.S.C. § 1331 and 1343.

6) The plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.

7) The Court has supplemental jurisdiction over plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

8) Plaintiffs claims for injunctive relief are authorized by 28 U.S.C. Sections 2283 and 2284.

9

**A**

(( A LONGSTANDING INSTITUTIONAL WIDE SYSTEMIC POLICY, PRACTICE, PROCEDURE, CUSTOM AND USAGE OF THE EXCESSIVE FORCE ON MENARD C.C. INMATES THAT PLACED PLAINTIFF IN IMMINENT RISK OF HARM AND PURSUANT TO WHICH PLAINTIFF SUFFERED THE EXCESSIVE FORCE ALLEGED IN THIS COMPLAINT INFRA - ILLUSTRATING MONELL TYPE MUNICIPAL LIABILITY TYPE LIABILITY. ))

9) The allegations in this issue "A" are to show a longstanding institutional wide systemic policy, practice, procedure, custom and usage of the excessive force on Menard C.C. inmates that placed plaintiff in imminent risk of harm and pursuant to which plaintiff suffered the excessive force alleged in this complaint _infra._

10) There is a longstanding, deeply embedded, persistant and widespread policy, practice, procedure, custom and usage (contrary to written policy) of the unconstitutional unnecessary use of force by the correctional officers, supervisors, officials, medical employees and all named defendants of the Menard C.C. on the ~~correctional~~ inmates of the Menard C.C. that causes them more than de minimus or otherwise serious or significant physical injury or on occasion perhaps death, deliberately, maliciously, willfully, sadistically, with an evil intent, without any legitimate penological interest in restoring or maintaining order.

11) That this policy, practice, procedure, custom and usage of excessive force is soo permanent and well settled as to have the force of law.

12) That it was and still is at all relevant times a systematic, well established and everyday facet of institutional life at Menard C.C. that one to multiple in total Menard C.C. inmates suffer excessive force to their persons pursuant to the policy, practice, procedure, custom and usage of excessive force.

13) That this policy, practice, procedure, custom and usage of excessive force could not have long existed and still exist were it not for the knowledge, approval, implicit authorization, express authorization, implied authorization and knowing acquiescence of all named defendants all of them whom owed and owe plaintiff a duty to protect him from and prevent him from suffering excessive force.

10

14 ) That this policy, practice, procedure, custom and usage of excessive force placed the plaintiff at all relevant times in the pervasive and imminent risk of suffering the unconstitutional, unnecessary use of force by correctional officers, supervisors, officials, medical employees and all named defendants employed at the Menard C.C. that would cause him deliberate, malicious, vicious, sadistic and evil intent inflicted more than de minimus or otherwise serious or significant physical injury or perhaps death to his person during his stay at M.C.C. .

15 14 ) For reasons of showing the excessive force policy, practice, procedure, custom and usage was longstanding and well established. on information and belief in part and on personal knowledge as a first hand witness in part in excess of several hundred and nearing one thousand inmates had annually for the last several years leading up to the excessive force incidents on plaintiff in this complaint, suffered from the unconstitutional unnecessary use of excessive force by the Menard C.C. officers, supervisors, officials, medical employees, all named defendants whom work at Menard C.C. upon their persons causing them more than de minimus or otherwise significant or serious physical injury or on occasion death perhaps at Menard C.C. done pursuant to this policy, practice, procedure, custom, and usage.

16 ) That on multiple previous occasions plaintiff has communicated to all named defendants employed at Menard C.C. including Warden of Menard C.C., Asst. Wardens of Menard C.C. that the policy, practice, procedure, custom and usage of excessive force placed him (and the other inmates) in the imminent and pervasive risk of suffering excessive force by Menard C.C., employees, correctional officers, supervisors, officials and even medical employees.

17 ) That on information and belief on multiple previous occasions other Menard C.C. inmates have communicated to all named defendants including Governor Quinn, Director Godinez, Warden of Menard C.C., Asst. Wardens of Menard C.C. that the policy, practice, procedure, custom and usage of excessive force placed the Menard C.C.

11

inmates which includes plaintiff, in the imminent and pervasive risk of suffering exce-
ssive force by Menard C.C. employees, correctional officers, supervisors, officials and even
medical employees.

18) That at all times defendant Salvador Godinez knew that his subordinates were failing
to take any reasonable steps to protect plaintiff from the excessive force policy, practice,
procedure, custom and usage and himself failed to take any reasonable steps to protect
the Menard C.C. inmates including plaintiff from the excessive force policy, practice, proce-
dure, custom and usage.

19) That at all times defendant Governor Patrick Quinn knew that his subordinates
were failing to take any reasonable steps to protect plaintiff from the excessive force
policy, practice, procedure, custom and usage and himself failed to take any reasonable
steps to protect the Menard C.C. inmates including plaintiff from the excessive force policy,
practice, procedure, custom and usage.

20) That as a direct and proximate result of the excessive force policy, practice,
procedure, custom and usage and the actions and inactions of the def-
endants in this issue "A" plaintiff suffered the incidents of excessive force
described infra.

21) That despite what is stated in this issue "A" the defendants named in this issue
"A" have failed to take the reasonable steps to protect plaintiff (and the other
Menard C.C. inmates) from the excessive force policy, practice, procedure, custom
and usage.

B    " DISABILITIES "

22) That plaintiff has long suffed serious mental illness including but not limited to bi-polar disorder.

23) That plaintiff is a qualified individual with multiple disabilities as defined under the American with Disabilities Act and its implementing regulations including 42 U.S.C. section 12131 (2) and section 12102 (2). Plaintiff has mental impairments that substantially limit one or more major life activities ; and or he has records of having such impairments ; and or he is regarded as having such impairments.

24) That the Menard Correctional Center housing plaintiff is a public entity as that term is defined in 42 U.S.C. section 12131. All defendants at all relevant times acted in their official capacities as representatives of the public entity that is the Menard C.C.

25) The plaintiff meets the essential eligibility requirements for the receipt of services or the participation in programs and activities by all defendants in this complaint as relevant and their agents.

26) That upon information and belief the Illinois Department of Corrections and Menard Correctional Center receives federal financial assistance ; thus making them subject to section 504 of the Rehabilitation Act, 29 U.S.C. section 794(a) and section 705 (20).

27) That plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and its implementing regulations. Plaintiff has mental and phy-sical impairments that substantially limit one or more major activities ; and

13

or he has records of having such impairments; and or he is regarded as having such impairments.

28) The defendants named infra in paragraphs __32__ through __41__ failed to reasonably accomodate plaintiffs disabilities and instead discriminated against him in ways that increase the severity of his mental and physical illness by denying him his medication for said as described in paragraphs __32__ through __41__.

29) That defendant Bartens failed to reasonably accomodate plaintiffs disabilities and instead discriminated against him in ways that increased the severity of his mental and physical illness by denying him a mental health crisis team as described infra in paragraphs __59__ through __61__.

30) That defendants named infra in paragraphs __47__ through __49__ failed to reasonably accomodate plaintiffs disabilities and instead discriminated against him in ways that increased the severity of his mental and physical illness by threatening and ordering the excessive force on him described in paragraphs __47__ through __49__.

31) The defendants named infra in paragraphs __47__ through __69__ failed to reasonably accomodate plaintiff disabilities and instead discriminated against him in ways that increased the severity of his mental and physical illness' by denying him mental health access and instead using excessive force on him.

14

" _Medication Denial_ "      ___C___   " _1st Amendment Retaliation_ "

32 ) That on or about October 18, 2012 plaintiff was living in Menard C.C. North 2 cell house 8 gallery cell 30.

33) That on or about October 18, 2012 plaintiff was in need of immediate psychiatric and psychological professionals need for his serious mental illness.

34) That on or about October 18, 2012 at about 7:00 pm _____ plaintiff was in the back of his cell washing up and cleaning.

35) That on or about October 18, 2012 at about 7:00 pm _____ unknown nurse or med tech # 1 used plaintiffs cleaning up/washing up in the back of cell as an excuse to not give plaintiff his needed medication for his serious mental and physical illness and thus failed to do so.

36 ) That in Menard C.C. pill stealing by nurses/med techs is pervasive and these nurses/med techs commonly falsify in inmates medical records that the inmates got the pills.

37) Plaintiff complained about unknown nurse or med tech #1 failure to give him his meds at about 7:30 pm ____ on or about October 18, 2012 to defendant Sergeant Euadee.

38) Plaintiff again complained about unknown nurse or med tech # 1 failure to give him his meds at about 8:30 pm ____ on or about October 18, 2012, to defendant Sergeant Euadee.

39) That defendant unknown nurse or med tech # 1 or or about 9:00 pm ____ on or about October 19, 2012 returned to plaintiffs cell with a bag of pills mixed like some kind of drug dealer or addict and gave plaintiff what looked like his meds per said defendant but plaintiff responded they were not and said defendant said to plaintiff so what.

40) In any case defendant Sergeant Euadee retaliated against plaintiff for his complaints in paragraphs 32 through 38 supra by turning off all of the water in plaintiffs cell at about 8:45 pm on or about October 18, 2012 and

15

then defendants Sergeant Euadee and C/o Bartons again retaliated against the plaintiff by turning his water all the way up in the cell at about 11:00 pm on or about October 18, 2012, the water breaking plaintiff's T.V. in his cell and making a mess for plaintiff to clean.

41) That repeatedle defendants named below in paragraphs 48 & 50 and incorporated herein threatened plaintiff individually that they would subject him to the use of excessive force they used on him described infra at paragraphs 47 through 69 multiple times before using said excessive force and they told plaintiff they were going to do so in retaliation for plaintiff's complaints supra 32 paragraphs to 40 made earlier and his mental illness problems supra paragraphs 22 through 31 and for allegedly throwing water on C/o defendant Bartons whether an accident or not.

◻ "DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS POLICY ... MONELL TYPE LIABILITY"

42) There is a longstanding, deeply embedded, persistant and widespread policy, practice, procedure, custom and usage (contrary to written policy) of the unconstitutional denial of inmates the needed treatment to medically treat the serious medical needs by the C/o's, supervisors, officials, medical employees, Wexford Health Sources Inc. and all named defendants of the Menard C.C.

43) That this policy, practice, procedure, custom and usage of deliberate indifference to inmates serious medical needs is sco permanent and well established as to have the force of law.

44) That it was and still is at all relevant times a systematic, well established and everyday facet of institutional life at Menard C.C. that many of its inmates suffer deliberate indifference to their serious medical needs pursuant to the policy, practice, procedure, custom and usage of the same.

45) That this policy, practice, procedure, custom and usage of deliberate indifference could not have long existed and still exist were it not for the knowledge, approval, implicit authorization, express authorization, implied authorization and knowing acquiescence of all named

defendants all of whom owed and owe plaintiff a duty to protect him from being subjected to the deliberate indifference to his serious medical needs.

46) That this policy, practice, procedure, custom and usage of deliberate indifference to inmates serious medical needs is often applied out of a lack of care, for money saving reasons, to cover up instances of excessive force, to cause harm or death.

## E.   EXCESSIVE FORCE

47) That defendant C/O Bartens on October 19, 2012 at about __12:00 pm__ accused plaintiff of throwing fluids on him and of being mentally ill and of making too many complaints including the complaints stated above in paragraphs __32 to 40__ supra and repeatedly threatened plaintiff with excessive force by him personally and or by him and others in retaliation therefore.

48) That defendants named below in paragraph __50__ and incorporated herein threatened plaintiff individually that they would subject him to the use of excessive force they used on him described infra at paragraphs __50__ through __69__ multiple times before using said excessive force and they told plaintiff they were going to do so in retaliation for plaintiffs complaints __supra__ paragraphs __32__ through __40__ and for allegedly throwing water on C/O defendant Bartens or such other fluid whether accident or not.

49) That at approximately 12:10 pm and plus on October 19, 2012 in the Menard C.C. North 2, 8-30 cell front area defendant C/O Bartens himself then repeatedly told plaintiff (1) that plaintiff had a severe beating coming and asked plaintiff (2) whether plaintiff would like to be cuffed up so he could be taken out of the cell so plaintiff could be severely beaten and then returned to his cell or if plaintiff would prefer a suited and booted and masked and armed tactical team pepper spray him and run in on him to hurt him.

50) Next at approximately 3:00 am on October 19, 2012 in the Menard C.C.

North 2 cell house at 8 gallery cell 30 appeared an armed suited in Orange Jumpsuits, booted, with shin guards and masked tactical team consisting of to the best of plaintiffs knowledge, information and belief defendants Compton, Harmon, Collins, Bartens and three unknown correctional guards.

51) Defendants had no legitimate reason to cell extract plaintiff.

52) Plaintiff posed no risk of harm to any person.

53) Defendants sole reason in entering plaintiff cell as a tactical team was to hurt plaintiff.

54) Defendants acted pursuant to a common, plan, conspiracy, design, policy, practice, procedure, custom and usage in using excessive force on plaintiff.

55) That defendants Compton, Harmon, Collins, Bartens and three unknown correctional guards at approximately 3:00 am on October 19, 2012 in the Menard C.C. North 2 cell house at 8 gallery cell 30 were there at the plaintiffs cell for the single and unique malicious and sadistic purpose of causing the plaintiff physical harm.

56) Next that on or about October 19, 2012 at approximately 3:00 am in the Menard C.C. North 2 cell house at plaintiffs 8 gallery cell 30 and for the single and unique, malicious and sadistic purpose of causing plaintiff physical harm defendants Compton, Harmon, Collins, Bartens and 3 unknown correctional guards OC pepper sprayed plaintiff with a big can of OC Pepper spray.

57) Defendants had no need to OC Pepper spray plaintiff.

58) Any need defendants may have claimed to OC Pepper spray plaintiff was a pretext to use excessive force on plaintiff.

59) Prior to the excessive force began plaintiff made multiple requests to defendants Compton, Harmon, Collins, Bartens and three unknown correctional guards to accomodate his mental disabilities by getting him a mental health crisis team and mental health access talking to each of them individually.

60) That each of these defendants named above in paragraph 59 told plaintiff that they would not accomodate his mental disabilities

18

by setting him a mental health crisis team and mental health
access.

61) That these defendants in paragraphs 47 to 69 failure to get plaintiff
the needed mental health crisis team and mental health access was done
on purpose in order to fail to accomodate plaintiff disabilities.

62) That these defendants in paragraphs 47 to 69 failure to get plaintiff
the needed mental health crisis team and mental health access was done so that
they could use excessive force on plaintiff.

63) Next minutes later in the Menard C.C. North 2 cell house at plaintiffs
B gallery cell 30 defendants Comptom, Harmon, Collins, Bartens and 3 unknown
connectional guards for the single and unique malicous and sadatic purpose
of causing the plaintiff physical harm and despite any pretext otherwise ran into
plaintiffs cell striking him multiple times. Any fighting in response by the plaintiff
was a natural response to defendants actions. Defendants Comptom, Harmon,
Collins, Bartens and 3 unknown connectional guards held plaintiff restrained
on the ground, unable to defend himself, and one of these defendants
viciously kneed the plaintiff in the face 5 to 6 times, while the others
encouraged, allowed, condoned and approved it. This masked defendants
kneeing plaintiff in the face caused serious bodily harm to the plaintiffs
right eye and orbital socket and swelling and bleeding and contusion
and loss of vision. There defendants cuffed plaintiff too tight. These defen-
dants shackled plaintiff too tight. The masked defendant whom repeatedly had
kneed the plaintiff in face including eye area particularly will be named
at a later date.

19

64 ) These defendants were required to utilize a video camera each time a tactical team entered an inmates cell to supposedly extract an inmate.

65) These defendants later told plaintiff they would have beaten him to death in the cell if they could.

66) At the Menard C.C. H.C.U. infirmary these defendants named above in paragraph 63 supra put plaintiff face down on a bed in the infirmary and beat stomped punched and kicked and hit plaintiff all over his head and his body for about 10 minutes while he was handcuffed and shackled and unable to defend himself. This incident starting at about 3:25am October 19, 2012.

67) That defendants use of excessive force on plaintiff that is described above in paragraph 66 were malicious, sadistic and for the sole purpose of causing plaintiff pain and suffering and were not done for any legitimate penological interest such as maintaining or restoring order.

68) The policy, practice, procedure, custom and usage of excessive force described supra in "A" paragraphs was a direct and proximate cause and moving force or direct casual link behind all defendants usages of excessive force on plaintiff described in this issue E .

69) Wherefore plaintiff suffered pain and suffering and physical injury, pepper spraying, loss of breath, serious right eye injury, serious orbital socket injury, and swelling, and bleeding and contusion and loss of vision, and multiple bruises, lacerations, contusions all over back of body and head and mental pain and suffering, anguish, fright, shock,

20

humiliation, mortification and future pain and suffering and future mental
pain and suffering.

" DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS "

70) That on or about October 19, 2012 about 3:20am to 4:00am did the
defendants Compton, Harmon, Collins, Bartens and three unknown correctional
guards in the Menard C.C. N.C.U. and in the Menard C.C. N.C.U. infir-
mary repeatedly communicate to Defendant Nurse # 2 and Defendant
Nurse or Med Tech # 3 (a) not to treat plaintiffs excessive force
caused serious medical needs and (b) not to document in plaintiffs
medical records that plaintiff claims his serious medical needs
were excessive force caused.

71) As a result of what is stated in the above paragraph defendant Nurse# 2
and Nurse or Med Tech # 3 put a stick it note in plaintiffs medical
records that no one document plaintiffs claiming excessive force cau-
sed injuries and falsely documented plaintiffs eye injury [socket]
injury as an accident and accept for the eye injury [socket] injury
which was obvious they failed to provide plaintiff the medical
treatment he needed to provide to treat his serious medical needs
described supra in paragraphs 41, 42, 46, 68, 63, 66, 69 and incorporated
herein. From that time on and never providing plaintiff the needed
medical treatment not even for his seriously hurt shoulder and back
which was welted black and blue.

72) That the next day defendants unknown medical employees 1 through 3

2.1

October 20, 2012 except for his eye injury (socket injury which they could-
not hide failed to provide plaintiff the needed medical treatment he needed to
treat his serious medical needs described supra in paragraphs 41,42,46,62,
63, 66 and 69 and incorporated herein from that day time on and never
providing plaintiff the needed medical treatment not even for his seriously hurt
shoulder and also his back which was welted black and blue.

73) There is a longstanding, deeply embedded, persistant and widespread policy, practice, pro-
cedure, custom and usage (contrary to written policy) of the unconstitutional deliberate
indifference to inmates serious medical needs by the %'s, supervisors, officials,
medical employees, Wexford Health Sources Inc. described supra in paragraphs  9
through  21   and incorporated herein and all named defendants in this issue
#2.

74) That this policy, practice, procedure, custom and usage of deliberate indifference
to inmates serious medical needs was a direct and proximate cause and moving
force or direct casual link behind defendants Comptom, Harmon, Collins, Bartens
and three unknown unknown correctional guards, Nurse # 2, Nurse or
Med Tech #3(a), Unknown medical Employees 1 through 3 above described delib-
erate indifference to plaintiffs serious medical needs.

75) Wherefore plaintiff suffered pain and suffering and physical injury and
mental pain and suffering, anguish, fright, shock, humiliation, mortification, and
future pain and suffering and future mental pain and suffering.

76) For the foregoing reasons and as a direct and proximate cause of defendants wrongful conduct and actions and inactions and policies, practices, procedures, customs and usages plaintiff has suffered and will continue to suffer in connection with the excessive force he suffered o

a) violations of the 8th and 14th U.S. Constitutional Amendments prohibition of cruel and unusual punishment in the form of excessive force;

b) violations of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR, 39th Sess., Supp. No. 51 at 197, U.N. Doc. A/39/51;

c) violations of the International Covenant on Civil and Political Rights, Dec. 16, 1966, art's. 7, 10, G.A. Res. 2200 A (xxI), U.N. GAOR, 21st Sess., Supp, No. 16 at 51, U.N. Doc. A/6316, 999 U.N.T.S. 171;

d) violations of the Universal Declaration of Human Rights, Dec. 10, 1948, art's. 2, 5-6, 8, G.A. Res. 217 A (III), U.N. GAOR, 3d Sess., 14, 1, at 71, U.N. Doc. A/810;

e) violations of the Standard Minimum Rules For The Treatment of Prisoners, Aug. 30, 1955, E.S.C. 663 C, 24 U.N. ESCOR Supp. (No. 1) at 11, U.N. Doc. A/CONF/611;

f) violations of the Basic Principles for the Treatment of Prisoners, Dec. 14, 1990, Principle 1, G.A. Res. 45/111, U.N. GAOR, 45th Sess., Supp. No. 49 A, at 199, U.N. Doc. A/45/49;

g) violations of the Code of Conduct for Law Enforcement Officials, Dec. 17, 1979, art's. 1-2, 5-6, G.A. Res. 34/169, U.N. GAOR, 34th Sess., Supp. No. 46, at 186, U.N. Doc. A/34/46;

h) violations of the Body of Principles for The Protection of All Persons under Any Form of Detention or Imprisonment, Dec. 9, 1998, Principle 1, G.A. Res. 43/173, U.N. G.A.O.R., 43d Sess., Supp. No. 49, U.N. Doc. A/43/49;

i) violations of Jus cogens customary International law and or customary International law and or common law International Law prohibiting torturous, cruel, inhuman or degrading treatment or punishment of prisoners;

j) violations of Sections 2 and 11 of the Constitution of the State of Illinois to be free from the infliction of intentional harm by prison officials;

23

K) violations of the State tort of assault and battery

77) For the foregoing reasons and as a direct and proximate cause of defendants wrongful conduct and actions and actions and policies, practices, procedures, customs and usages plaintiff has suffered and will continue to suffer in connection with the deliberate indifference to his serious medical needs he suffered :

a) violations of the 8th and 14th U.S. Constitution Amendments prohibition of cruel and unusual punishment in the form of deliberate indifference to his serious medical needs ;

b) violations of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment id supra ;

c) violations of the International Covenant on Civil and Political Rights id supra ;

d) violations of the Universal Declaration of Human Rights id supra ;

e) violations of the Standard Minimum Rules For The Treatment Of Prisoners id supra ;

f) violations of the Basic Principles For The Treatment of Prisoners id supra ;

g) violations of the Code of Conduct for Law Enforcement Officials id supra ;

h) violations of the Body of Principles For The Protection of All Persons under Any Form of Detention or imprisonment id supra ;

i) violations of jus cogens customary International law and or customary International law and or common law International Law prohibiting torturous, cruel, inhuman or degrading treatment or punishment of prisoners ;

j) violations of Sections 2 and 11 of the Constitution of the State of Illinois to be free from the infliction of intentional harm by prison officials

24

. 48) For the foregoing reasons and as a direct and proximate cause of defendants wrongful conduct and
actions and inactions plaintiff has suffered in connection with his 1st Amendment Retaliation
Claims in "C" supra

a.) violations of his 1st Amendment under the U.S. Constitution right to be free
from retaliation from making legitimate complaints ;

b) violations of state law ;

c) violations of state tort of intentional infliction of emotional distress .

d) mental pain and suffering, extreme emotional distress, ~~physical manifestation~~
shock, fright, humiliation, mortification ~~and bodily conduct and suffering~~ and future mental pain
and suffering .

For the foregoing reasons and as a direct and proximate cause of defendants wrongful conduct
and actions and inactions plaintiff has suffered in connection with his Disabilities claims
in "B" supra

a) violations of the Americans with Disabilities Act, 42 U.S.C. Sections 12131
et seq. ;

b) violations of Section 504 of the Rehabilitation Act, 29 U.S.C. sections 794 ;

c) violations of State law ;

d) violation of the State Tort of Intentional Infliction of Emotional Distress.

2 5

## V.   REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

As to each claim raised in this complaint award plaintiff declaratory relief against defendants.

As to each claim raised in this complaint award plaintiff punitive damages U.S. Currency jointly and severally against defendants.

As to each claim raised in this complaint award plaintiff actual damages U.S. Currency jointly and severally against defendants.

Grant injunctive relief that defendants not violate plaintiffs Constitutional U.S. Amend. 8 Statutory rights ever again as there is no certainty plaintiff wont be returned to Menard C.C. [1]

Award plaintiffs counsel attorney fees.

Award plaintiff costs and expenses incurred in prosecuting this action.

Grant such other relief as it may appear that plaintiff is entitled.

## VI.   JURY DEMAND (check one box below)

The plaintiff ☒ does ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: **7-12-14**
(date)

Signature of Plaintiff

**P.O. Box 99**
Street Address

**Damien Ward**
Printed Name

**Pontiac IL 61764**
City, State, Zip

**# R-59244**
Prisoner Register Number

Signature of Attorney (if any)

[1] No injunctive relief is sought as to plaintiffs state law & tort claims.